FLEMING, Administrator of Wage and Hour Division, United States Department of Labor, v. MILLER et al.

No. 255.

District Court, D. Minnesota, Third Division.

Nov. 14, 1942.

Warner W. Gardner, Sol., and Roy C. Frank, Asst. Sol., both of Washington, D. C., Donald M. Murtha, Regional Atty., of Minneapolis, Minn., and Lester M. Levin, Principal Atty., of Washington, D. C., all of Wage and Hour Division, United States Department of Labor, for plaintiff.

Doherty, Rumble, Butler, Sullivan & Mitchell, of St. Paul, Minn., and Feldman, Kittelle, Campbell & Ewing, of Washington, D. C., for defendants.

JOYCE, District Judge.

This matter is before the court on a motion by defendants to vacate, suspend or modify a consent decree entered herein on July 17, 1941, and to permit defendants to defend the proceeding on the merits.

The consent decree in question was entered against defendants pursuant to a stipulation between them and plaintiff. It ordered defendants to refrain from violating the Fair Labor Standards Act and to pay to their employees an amount of money which was equal to the difference between what the employees received as wages and what they would have received if defendants had complied with the Act since it became effective. However, the parties agreed that the entry of the consent decree did not constitute an admission by defendants that they had violated the Act.

Defendants' counsel informed the court when the decree was entered that his clients were fully aware of their responsibility under the decree. Since its entry various things have taken place which defendants claim entitle them to relief from the decree:

1. The United States Supreme Court has affirmed the case of Walling v. A. H. Belo Corporation, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716; Fleming v. A. H. Belo Corp., 5 Cir., 121 F.2d 207, which defendants claim is in point in the instant case and which they have discovered since entry of the decree.

2. On October 6, 1941, the Interstate Commerce Commission held that the employees of Addison Miller, Inc. (Minn.), were employees of a "carrier" under Part I of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq. (I.C.C.Docket, Ex Parte No. 72, Sub. No. 1), reversing the decision of the Examiner and Third Division of the I.C.C. made prior to the decree.

3. In 1941 the Emergency Mediation Board, operating under the provisions of the Railway Labor Act, 45 U.S.C.A. §§ 151–163, exercised jurisdiction over Addison Miller Company subsequent to the entry of the decree.

4. The Railroad Retirement Board, which is created by the Railroad Retirement Act, 45 U.S.C.A. § 228a et seq., is apparently preparing to exercise jurisdiction over some of the defendants.

5. Several employees of the Addison Miller Company and employees of Addison Miller, Inc. (Ill.) are now bringing suit against those defendants under Section 16 (b) of the Fair Labor Standards Act, 29 U.S.C.A. § 216(b), seeking back wages and the damages allowed by the Act.

Since entry of the decree defendants have employed new counsel who are pressing the motion here involved. The motion is based upon several grounds, to-wit:

(1) The decree is defective.

(2) The court lacked jurisdiction to order restitution of any wages due under the Fair Labor Standards Act.

(3) Defendants' former counsel was probably mistaken with respect to defendants' liability under the Fair Labor Standards Act, and therefore defendants are entitled to at least a modification of the decree because of Rule 60(b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

(4) The change in circumstances since the entry of the decree requires that the court exercise its equitable power and grant defendants relief from the decree, for otherwise "inconsistent liabilities" would exist under the Railway Acts and the Fair Labor Standards Act.

Plaintiff contests all of defendants' arguments, and urges that the decree stand.

(1) Is The Decree So Defective That It Should Be Changed?

Defendants contend that the decree should be modified, vacated or suspended because it enjoins *any* violations of the Act, whereas the complaint asks that only certain specified violations be enjoined.

■■ This case involves the enforcement of the Wage and Hour Law. Section 17 of that Act, 29 U.S.C.A. § 217, invests in United States District Courts jurisdiction to restrain violations of Section 15, 29 U.S.C.A. § 215. Since the complaint asked that the defendants be ordered to comply with the Act and that an injunctive decree so ordering be granted, this court obviously possessed jurisdiction over the subject matter of the action. The defendants all appeared by counsel so that the court also possessed jurisdiction over the persons involved. In fact, no question was raised in that respect. Consequently, the fact that the court granted a greater degree of relief than the complaint requested seems immaterial, for the statute empowered the court to grant injunctive decrees to restrain violations of the act. The error, if it is an error, is not one going to the question of the court's *possessing* jurisdiction over the subject matter; it goes to the question of the *exercise* of that jurisdiction, and the attack should be by appeal rather than by a motion to vacate, modify or suspend.

■■ Swift & Co. v. United States, 276 U.S. 311, 48 S.Ct. 311, 316, 72 L.Ed. 587, cited by plaintiff, supports the conclusion that an attack upon a consent decree which affords plaintiff a greater degree of relief than that for which plaintiff petitioned cannot be made by a motion to vacate or modify if the court entering the decree had jurisdiction over the parties and the subject matter. The court said. "Obviously the generality of a court's decree does not render it subject to a motion to vacate."

This case has been followed by the lower Federal Courts in Securities and Exchange Comm. v. Jones, D.C.S.D.N.Y., 15 F.Supp. 321, affirmed in 2 Cir., 85 F.2d 17; Bullard v. Com'r of Internal Revenue, 7 Cir., 90 F.2d 144; Smyth v. United States, 10 Cir., 92 F.2d 900, 901. The rule seems sound in view of the doctrine that parties may litigate by consent issues not raised by the pleadings if the court has jurisdiction over the subject matter.

In opposition to the Swift case defendants rely upon National Labor Relations Board v. Express Publishing Co., 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930; Fleming v. Salem Box Co., D.C., 38 F.Supp. 997; and Milk Wagon Drivers Union v. Meadowmoor Farms, 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836, 132 A.L.R. 1200. However, the first case involved a contested decree which was before the court on an appeal, and the cases relied upon by the court in that case, including the Swift case, are the same kind. No courts, so far as I am advised, have applied the rule of that case to a consent decree. The Salem Box Company case involves a consent decree, but the question of the generality of the decree appears to have been raised by the court when the decree was made. Whether the parties could raise the question, or when it could be raised, was not involved. The fact that plaintiff consented to the modification of that decree seems immaterial here. The Meadowmoor case involved the review of a decree directing a permanent injunction against acts of violence and picketing by a labor union. The warning of the misuse of an appropriate injunction had to do with encroachments on free discussion, and the court's availability to correct finds no analogy in the instant facts.

Therefore, in view of the general rule that a court's decree cannot be collaterally attacked if the court possessed jurisdiction over the subject matter and the parties, I. am of the opinion that the decree should not be modified because of its generality and broadness.

Neither do I agree with defendants' contention that plaintiff was estopped from bringing this action because of plaintiff's employee informing them their practices were not violative of the Act, for the United States Government cannot be estopped from enforcing a statute because of the interpretation placed upon it by its "officers or agents". United States v. San Francisco, 310 U.S. 16, 60 S.Ct. 749, 757, 84 L.Ed. 1050.

Defendants also contend that the decree violates Rule 65(d) of the Rules of Civil Procedure. This rule pertains to the form of the decree. 3 Moore's Federal Practice 3324, which cites Lawrence v. St. Louis-San Francisco R. Co., 274 U.S. 588, 47 S.Ct. 720, 71 L.Ed. 1219, and Druggan v. Anderson, 269 U.S. 36, 46 S.Ct. 14, 70 L.Ed. 151, holds that the failure to comply with a provision like Rule 65(d) does not render the decree void. The Lawrence case interprets 28 U.S.C.A. § 383 and the Druggan case interprets a Prohibition Act, 27 U.S.C.A. § 34, provision. Both provisions are similar to Rule 65(d), and Moore declares that no distinction can really be drawn. Such provisions were held to be not mandatory. Defendants cite no cases in support of their contention and did not press their argument that the rule has been violated.

Defendants further contend that "in view of the probable application of the Railroad Labor Acts" they are exempt from Section 7 of the Fair Labor Standards Act, 29 U.S.C.A. § 207, and that therefore the court did not have *jurisdiction* to grant the decree. I am of the view, however, that the defendants' liability under the railway acts (if they are liable) would not affect the court's *power* to enjoin violations of the Wage and Hour Act. It would go only to the question of whether the court should *exercise* its power with respect to them.

(2) Does The Court Possess Jurisdiction To Order Restitution in This Case?

This is an equitable action based upon Section 17 of the Fair Labor Standards Act. Since Section 17 does not authorize the court expressly to order the payment of back wages in actions brought under that section, those awards can be granted only as a result of the equity court's power to grant incidental relief. The United States District Court does not appear to possess under this section the power to order the payment of back wages as incidental relief. It is the general rule that if a statute creates a liability (or right) and gives a special remedy for the enforcement of that liability or right, that remedy is the exclusive one. United States v. McCord, 233 U.S. 157, 34 S.Ct. 550, 58 L.Ed. 893; Fourth National Bank v. Francklyn, 120 U.S. 747, 7 S.Ct. 757, 30 L.Ed. 825. Section 16(b) of the Fair Labor Standards Act specifically gives to the employees the right to sue for the back wages which the incidental relief granted by this court would involve. Therefore, the remedy given to the employees seems to be the only manner by which the employer's liability for back wages could be enforced under the Act. This construction was applied in Decorative Stone Co. v. Building Trades Council, 2 Cir., 23 F.2d 426, certiorari denied 277 U.S. 594, 48 S. Ct. 530, 72 L.Ed. 1005, to practically identical provisions in the Anti-trust Acts, 15 U.S.C.A. § 1 et seq. The court plainly declared in that case that the suit by the person entitled to sue for money could not be joined with the suit to enjoin violation of the Act even though the suits were brought by the same party.

Plaintiff does not question the applicability of the above rule but contends that the power to issue an injunction includes the power to decree restitution and assumes that defendants are questioning the power of the court upon constitutional grounds. However, defendants clearly contend that the court cannot grant restitution because Section 17 only empowers it to grant an injunction. I do not think the holding in Fleming v. Warshawsky & Co., 7 Cir., 123 F.2d 622, is as broad as plaintiff's counsel implies. The court held that the restitution order therein involved was proper only to the extent that the employees to whom restitution was ordered were designated with sufficient certainty. The court's power to grant both an injunction and restitution in an action brought under Section 17 was not questioned in that case as far as the opinion indicates. In a statutory proceeding the court may make orders reasonably adapted to effectuate the objectives of the statute and such powers

are implicit in remedial statutes. However, the objective of the Fair Labor Standards Act, as far as Section 17 is concerned, is the protection of the employees by restraining violations of the Act. I doubt whether such a rule can enlarge the powers of the court, for it goes only to the manner in which the power may be exercised. Plaintiff relies upon Virginian R. Co. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789, and N. L. R. B. v. Jones & Laughlin, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352, which do not conflict with this interpretation.

■ The argument that no prejudice can result to defendants from the restitution order because defendants intend to pay back wages to their employees even if the restitution order is vacated is without merit. Because defendants are going to do of their own volition that which the decree erroneously orders them to do does not mean that the error is corrected and can become the basis of an unjustifiable precedent.

Federal Trade Comm. v. Klesner, 280 U.S. 19, 50 S.Ct. 1, 74 L.Ed. 138, 68 A.L.R. 838, holds that actions under the Federal Trade Act, 15 U.S.C.A. § 41 et seq., are brought for the benefit of the public. That case concerns an injunction. It might also be said that the injunction proceedings under Section 17 are brought for the benefit of the public. However, the payment of back wages is a direct benefit to the individual and so remotely beneficial to the public that it would not be within the purview of such protection even if the bringing of an action for the benefit of the public did enlarge the jurisdiction of the court. I do not read the Klesner case as holding that the mere fact that an action is brought for the benefit of the public enlarges the jurisdiction of the court in which it is brought.

(3) Are Defendants Entitled To Relief Under Rule 60(b) Of The Rules Of Civil Procedure?

The applicable part of Rule 60(b) reads as follows: *"Mistake; Inadvertence; Surprise; Excusable Neglect.* On motion the court, upon such terms as are just, may relieve a party or his legal representative from a judgment, order, or proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect. The motion shall be made within a reasonable time, but in no case exceeding six months after such judgment, order, or proceeding was taken."

■ ■ Defendants' counsel contend that they, their former counsel, and plaintiff's agents, were mistaken as to defendants' liability under the Fair Labor Standards Act. It will be noted, however, that Rule 60(b) specifically mentions only the mistakes made by the moving party and I do not believe that any mistake made by plaintiff's agents is material so far as this rule is concerned. Obviously, the mistakes of defendants and their former counsel are upon the same basis with respect to the application of Rule 60(b). Defendants argue that the decisions which the Interstate Commerce Commission and the Emergency Mediation Board have rendered with respect to the defendants since entry of this decree indicate that defendants are liable to the operation of the Railway Labor Act and, therefore, are exempt from the provisions of Section 7 of the Fair Labor Standards Act. These decisions, however, do not expressly hold that defendants are subject to the Railway Labor Act. In fact, not until the future decisions upon that question are rendered by the proper tribunal will it be known if defendants are subject to the Railway Act. Defendants do not show any facts which place them within the purview of the Railway Labor Act and do not claim the question as to their being subject to that Act is before this court. Therefore, the existence of a mistake by defendants as to their liability under the Railway Labor Act is still in the stage of probability. I doubt if Rule 60(b) contemplates the giving of relief for a *probable* mistake. To hold that a probable mistake is within the purview of the rule would deal with uncertainty, and the question would then arise as to the degree of probability necessary for the application of the rule and would necessarily lead to the setting of arbitrary limits. But be that as it may, the very wording of the rule assumes that actual mistake, inadvertence, surprise, or excusable neglect must exist, and I interpret the rule in the light of the common law as it was laid down by Judge Learned Hand in The Amaranth, 2 Cir., 68 F.2d 893, wherein it was held that neither a default nor consent judgment should be vacated unless at least a prima facie case of mistake is shown. In Western Union v. Dismang, 10 Cir., 106 F.2d 362, it was also shown that the common law requires more than a mere

probable mistake for the vacation of a consent decree. The same reasoning applies with respect to defendants' conclusion with reference to the probable action of the Railroad Retirement Board.

Defendants' contention that they are entitled to relief under Rule 60(b) because the decisions which the Interstate Commerce Commission and the Emergency Mediation Board have rendered since entry of this decree indicate that defendants may be subjected to the Railway Labor Act also raises the question whether subsequent adjudications can create a mistake within the meaning of Rule 60(b). It is asserted by defendants that a mistake of law is treated like a mistake of fact and that therefore equitable relief should be granted here. However, Peterson v. First National Bank of Ceylon, 162 Minn. 369, 203 N.W. 53, 42 A.L.R. 1185, upon which defendants rely, does not involve subsequent adjudications. It involves well established principles of law which existed at the time the mistake in that case was made by the moving parties' counsel. Further, as Justice Stone pointed out, all mistakes of law do not fall within the rule of that case. Justice Stone declared that if a mistake of law is one of practice it cannot be treated like a mistake of fact, because as Justice Story held public interest requires that there be an end to litigation. The same public interest would seem to be present with respect to a mistake which arises because of legal rules which are enunciated subsequent to the doing of the thing which becomes the mistake, for an interpretation such as contended for by defendants would threaten the finality of a court's decision. See Nachod & United States Signal Co. v. Automatic Signal Company, D.C., 32 F.Supp. 588. In that case the mistake of law was made by the court and not the parties. A reading of the opinion suggests the view that subsequent adjudications do not constitute previous conclusions a mistake within the meaning of Rule 60(b). The Hiram, 14 U.S. 440, 1 Wheat. 440, 4 L.Ed. 131, also cited by defendants, is a case of the same type as the Peterson case. It involves a mistake with respect to a law that already existed at the time the error was made. In the instant case the rulings with respect to which the alleged error was made were not yet existent. In The Amaranth case, 68 F.2d 893, 895, which is similar to the instant case, the defendant moved to vacate the consent decree which had been entered against him by stipulation one and one-half months prior to the motion, claiming that another case decided in the United States Supreme Court since the decree in that case had been entered had decided that the law upon which his liability was based had become void prior to the time when the decree was entered. Admitting that because of the subsequent case the law under which the consent decree was entered against him was void, and discussing defendant's "mistake of law", Judge Learned Hand said, by way of dictum:

"As a motion to vacate, it may be doubted whether a mistake of law, even though mutual, is enough in the case of a consent decree."

Although that case did not arise under Rule 60(b), it indicates the attitude which the court adopted towards mistakes of law which subsequent adjudications create.

Defendants assert that the Belo case is authority for their contention that their practices do not violate the Fair Labor Standards Act, and since they were not advised by their former counsel of the decision in that case prior to the consent judgment herein, they were mistaken as to their obligations under the Act. I am of the view that this contention is without merit. The Belo case was not the law of this district at the time the decree was signed or defendants' motion made. Judge Gardner, in affirming the lower court's decision of March 13, 1941, in Fleming v. Carleton Screw Products Co., 8 Cir., 126 F.2d 537, 540, certiorari denied, 317 U.S. ——, 63 S.Ct. 54, 87 L.Ed. ——, said of the Belo case: "We are not persuaded that this decision correctly construes these provisions of the statute, and we think it is not sustained by the weight of authority."

It is clear, therefore, that defendants were not mistaken when they thought no rule like that in the Belo case was in effect in this circuit. The decision of the Supreme Court came down about a year after the entry of the decree in question. To use such a decision as the basis for creating a mistake within Rule 60(b) would be a dangerous precedent with respect to the finality of decrees and judgments.

(4) DO THE CIRCUMSTANCES WHICH HAVE ARISEN SINCE THE ENTRY OF THE DECREE REQUIRE THE COURT TO GRANT RELIEF THROUGH THE EXERCISE OF ITS EQUITY POWERS?

Defendants contend that the court should exercise its equitable powers and modify, vacate, or suspend the consent decree because of the circumstances which have arisen since the decree was entered. They rely upon United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 462, 76 L. Ed. 999, as authority for their position. That case holds that the inherent powers of an equity court permit it to modify the consent decree if the circumstances which have arisen since the entry of the decree make it "an instrument of wrong". The decree is an instrument of wrong if, because of the change in circumstances, the moving parties are "the victims of oppression." The moving parties are the victims of oppression if the hardships they are suffering because of the changed circumstances are so extreme and unexpected that, when they are balanced against the substantial dangers which the injunction was designed to protect, equity and good conscience require a modification of the decree.

The circumstances which have arisen in the instant case since the entry of the decree are, as before stated, as follows:

1. Defendants have discovered the case of Fleming v. Belo Corp., supra, which they contend proves that they have not violated the Fair Labor Standards Act.

2. Several employees have instigated suits for back wages and damages under Section 16(b) of the Fair Labor Standards Act.

3. The Railroad Retirement Board is preparing to bring action to place one of defendants under its jurisdiction.

4. The Interstate Commerce Commission has rendered a decision against one of defendants under the Railway Labor Act.

5. The Emergency Mediation Board has rendered a decision with respect to one of the defendants.

All of the facts and circumstances which have arisen since the entry of the decree have not occurred with respect to all of the defendants. Only the Belo case discovery can be said to apply to all of them. The Interstate Commerce Commission decision under the Railway Labor Act pertained only to Addison Miller, Inc. (Minn.); the Mediation Board's ruling affected only the Addison Miller Company; the employees' suits under Section 16(b) are against only Addison Miller, Inc. (Ill.) and the Addison Miller Company; the Railroad Retirement Board's preparations appear to be only against Addison Miller, Inc. (Minn.). Neither party sets forth sufficient facts to determine whether the agency decisions could be extended to all of the defendants. The following diagram indicates the defendants to which each of the subsequent circumstances applied:

| G. N. Icing Co. | Addison Miller Company |
|---|---|
| Discovery of Belo case. | Discovery of Belo case. Mediation Board's decision. Suits by employees. |
| **Addison Miller, Inc. (Minn.)** | **Addison Miller, Inc. (Ill.)** |
| Discovery of Belo case. Interstate Commerce Commission decision. Railway retirement Board's preparations. | Discovery of Belo case. Suits by employees. |

As heretofore pointed out, the Belo case was not the law of this Federal district at the time of signing the decree or the making of the motion. Therefore, even if defendants had discovered the case prior to the entry of the decree, it would not have helped them, and for the reasons before set forth it cannot help them now. Thus the only basis for Great Northern Icing Company's motion disappears and under the Swift case doctrine that defendant is entitled to no relief.

The suits by the employees do not appear to be subsequent facts which require the court to exercise its equity jurisdiction under the Swift case. When defendants consented to the entry of the decree, they knew that their employees possessed the right to sue under Section 16(b) for back wages and liquidated damages. In fact, counsel discussed this problem prior to the negotiations and entry of the decree. Therefore, this action by the employees not only was foreseeable, it was foreseen, and defendants made agreements with respect to it with the plaintiff. In the Swift case the court said:

"Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed * * * with the consent of all concerned."

So that the last basis for the motion of Addison Miller, Inc. (Ill.) seems to fall, and the court is not bound to exercise its equitable powers under the Swift case with respect to that defendant.

■ Assuming that the decisions of the Interstate Commerce Commission, the Emergency Mediation Board and the Railroad Retirement Board indicate that the defendants probably are subject to the Railway Labor Act and the Railroad Retirement Act and that those subject to that Act are within the Section 13(b) (2) exemption to Section 7 of the Fair Labor Standards Act, I doubt that the Swift case affords defendant Addison Miller, Inc. (Minn.) or defendant Addison Miller Company any basis for relief. The Swift case requires that the extreme and unexpected hardship which entitles defendants to a modification of the decree should be actual and existing at the time the modification is sought. The wisdom of requiring that the hardship be actual and present seems quite clear. If that requirement did not exist, the purpose of the decree could easily be defeated.

■ Defendants here claim a probable injury. The actual injury will not occur, if at all, until defendants are subjected in the future to the alleged inconsistent liabilities of the railway acts and the Fair Labor Standards Act. Even if the Swift case is not limited in this manner, I doubt whether the equities weigh so heavily in defendants' favor that a change in the decree is necessary. Defendants' claim that they are not subject to Section 7 of the Act can be determined in the suits by the Railroad Retirement Board or other agencies enforcing the railway acts. The danger that defendants will not pay their employees the wages required by the Fair Labor Standards Act may still be present, for they contend that their methods used in determining the employees' wages prior to the entry of the decree is proper. In view of all the facts, I doubt whether the dangers which the decree seeks to remedy are reduced to any mere "shadow" when compared with the hardship suffered by the defendants. As the Swift case points out, the danger that the moving party will continue with the acts which the decree was designed to protect against is not "attenuated to a shadow" because the modification of the decree will serve the convenience of the moving party. Likewise, it appears that the doctrine of the Swift case does not permit a vacation or modification of the decree for the purpose of contesting the merits of the case. The court in that case said:

"The injunction, whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its making."

If the decree were vacated, modified, or suspended and defendants permitted to contest the case on its merits, as they request, the result would be that they would be able to question the conditions existent at the time the decree was entered. In view of all of which I am of the opinion that the Swift case doctrine does not permit a modification, suspension, or vacation of this consent decree.

### Summary.

I. Because the court had jurisdiction over the general subject matter of the action and over the parties to it, any defect in the form of the decree or the inclusion in it of restraints not asked for by the complaint do not require a change in the decree, for such things go only to the exercise of the court's jurisdiction and not to its possession of it.

II. Because Section 16(b) of the Fair Labor Standards Act gives to the employees a right to recover their wages and because Section 17 does not expressly permit the recovery of wages in an action brought under Section 17, any incidental powers which the court might have under that section are withdrawn, for when a statute creates a right (or liability) and gives a special remedy for its enforcement, that remedy is the exclusive one. Therefore, the court lacked jurisdiction to grant restitution in this action.

III. No mistake was created within the meaning of Rule 60(b) of the Rules of Civil Procedure:

(1) Because any mistakes by plaintiff's employees are immaterial.

(2) Probable mistakes do not seem to be covered by the rule.

(3) Subsequent adjudications do not create a mistake within the meaning of the rule.

(4) No mistake as to the law applicable to defendants was made with respect to the Belo case.

IV. The circumstances do not appear to have changed sufficiently since the entry of this decree to justify a vacation, modification, or suspension of the decree as prayed; but this does not mean that if defendants are subjected to subsequent liability and resultant hurt the decree should not be

modified to grant appropriate relief as the change in the facts or circumstances may suggest.

In view of the above conclusions the only relief to which defendants are now entitled is a vacation of the decree's order to make restitution of the back wages to their employees, and to that extent there will be a vacation and modification.

It is so ordered and an exception is granted to the parties aggrieved by this order.